**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
STATE FARM BANK, F.S.B.,         )
*et al.*,                        )
                                )
            Plaintiffs,          )
                                )
     v.                          )   Civ. Action No. 05-611 (EGS)
                                )
DISTRICT OF COLUMBIA,            )
*et al.*,                        )
                                )
            Defendants.          )
_____)

**MEMORANDUM OPINION**

The District of Columbia requires that persons engaged in
mortgage lending activities, including marketing activities, be
licensed, pay annual fees, and submit to oversight by the
District.  Plaintiffs are State Farm Bank, a federal savings
association and subsidiary of State Farm Mutual Insurance
Corporation, and Jon Laskin, one of State Farm Bank's exclusive
marketing agents (collectively "State Farm Bank" or
"Plaintiffs").  Plaintiffs seek declaratory and injunctive
relief, claiming the District's licensing and registration
regulations may not be enforced against them because those local
regulations are preempted by federal law.  Defendants are the
District of Columbia, Mayor Adrian Fenty, Commissioner of
Insurance, Securities and Banking Thomas Hampton
("Commissioner"), and unnamed Doe employees enforcing the
District's mortgage regulations (collectively "the District" or

-1-

"Defendants").  Defendants have moved for judgment on the pleadings as to Plaintiff State Farm Bank, or in the alternative for summary judgment.  Plaintiffs have moved for summary judgment and entry of a permanent injunction preventing enforcement of the District's regulations.  Upon consideration of the motions, responses and replies thereto, applicable law, and the entire record, the Court **DENIES** Defendant's motion for judgment on pleadings, or in the alternative for summary judgment and **GRANTS** Plaintiffs' motion for summary judgment and entry of a permanent injunction.[1]

## I.    BACKGROUND

### A.    The Parties

State Farm Bank is a federal savings association, chartered under the 1933 Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*, and headquartered in Bloomington, Indiana.  Federal savings associations are regulated by the Office of Thrift Supervision ("OTS"), a federal agency within the Treasury Department.  State Farm Bank is a wholly owned subsidiary of State Farm Mutual Insurance Company.  Although it is technically

---

[1] The Court recognizes that provisions of the Housing and Economic Recovery Act of 2008 (the "HERA"), Pub. Law 110-289, 122 Stat. 2654, may allow the states a greater regulatory role in the regulation of mortgage providers and marketers.  However, neither party has argued the case is moot.  Although the District may eventually pass new laws pursuant to the HERA, the dispute over the District's *current* laws and regulations is ripe for judicial review.

a savings association (or "thrift"), State Farm Bank essentially performs nationwide bank-like activities such as mortgage lending.  State Farm Bank has no branches or offices open to the public, instead marketing its financial products and services via exclusive agents (independent contractors) who also sell State Farm Mutual insurance products and services.  These agents provide customers with information, help customers fill out and complete loan applications, and perform other customer service activities.  The agents do not evaluate loan applications or actually make the lending decisions – that authority is in State Farm Bank itself.  State Farm Bank provides training on federal laws, has a compliance program, and conducts general oversight of its exclusive agents.

The District of Columbia Mortgage Lender and Broker Act of 1996, D.C. Code §§ 26-1101-1121 (2007), requires that individuals engaged in mortgage lending activities, including marketing and advertising, be licensed and trained, pay annual fees, and submit to general oversight by the Commissioner of Insurance, Securities, and Banking.  Such fees run from $1100 for an initial license to $900 for annual renewals.  In addition, mortgage brokers are required to post and maintain security bonds, ranging from $25,000 to 50,000 depending on the number and dollar amount of mortgage deals over the year.  These regulations expressly exempt federal savings associations, like State Farm Bank, but do

not exempt its independent contractor agents.

Prior to 2004, State Farm Bank acted on a jurisdiction-by-jurisdiction basis, either having its agents conform to local regulations or not marketing via agents at all.  Dissatisfied with this piecemeal approach, State Farm Bank changed strategies and sought an opinion from the OTS as to whether state regulation of its independent contractor marketing agents was preempted by federal statute and regulation.  In October 2004, the OTS issued an opinion letter ("Opinion Letter") finding that state regulation over State Farm Bank's marketing agents was indeed preempted.  Pls.' Mot., Exh. 2.  The OTS reasoned that the HOLA and accompanying regulations dominated the field to the exclusion of state regulations.  Specifically, OTS opined that because the marketing of mortgage-related products was a lawful activity under the HOLA, and because the HOLA allows third parties to act on behalf of federal savings associations, State Farm Bank may utilize its agents without state interference.  *Id.* at 5-8.  According to the Opinion Letter, such exclusive agents are only subject to federal regulation by the OTS.  *Id.* at 8-10.

In a November 2004 letter, State Farm Bank informed the Commissioner of the Opinion Letter and stated that it would no longer proceed with applications to license its agents.  In a December 2004 letter clarifying its position, State Farm Bank wrote that certain states had indicated disagreement with the

Opinion Letter, and that it would obtain agents' licenses and registrations in the District under protest.  In a January 4, 2005 response letter, the Commissioner stated that its legal office was reviewing the Opinion Letter and that "in the meantime it is clearly prudent for State Farm to protect its agents against enforcement actions by obtaining licenses required under state laws that may or may not be preempted by the OTS ruling." Pls.' Mot., Exh. 9.  State Farm Bank filed suit on March 24, 2005.

**B.    Statutory and Regulatory Framework**

The HOLA's general grant of authority is broad, providing that the OTS Director

> is authorized, under such regulations as the Director may prescribe –
>
>> (1) to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as Federal savings associations (including Federal savings banks), and (2) to issue charters therefor, giving primary consideration of the best practices of thrift institutions in the United States.  The lending and investment powers conferred in this section are intended to encourage such institutions to provide  credit for housing safely and soundly.

12 U.S.C. § 1464(a)(1)-(2).  The HOLA specifically authorizes federal savings associations to make mortgage or residential property loans. 12 U.S.C. § 1464(c)(1)(B).  In regard to third party relationships, the statute states that if a federal savings

-5-

association contracts out "any service authorized under this Act... (i) such performance shall be subject to regulation and examination by the Director to the same extent as if such services were being performed by the savings association on its own premises."  12 U.S.C. § 1464(d)(7)(D)(i).

The OTS itself has issued broad regulations.  A regulation entitled "Federal Preemption" states that the OTS has "plenary and exclusive authority … to regulate all aspects of the operations of Federal savings associations" and that this authority is "preemptive of any state law purporting to address the subject of the operations of a Federal savings association. 12 C.F.R. § 545.2.   A more specific regulation provides for "occupation of field," expressly preempting state laws imposing requirements on "licensing, registration, filings or reports by creditors," 12 C.F.R. § 560.2(b)(1), and "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(10).  Not preempted are state laws having to do with contracts, torts, criminal law, or "any other law that OTS, upon review, finds: (i) furthers a vital state interest; and (ii) either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed" in the statute.  12 C.F.R. § 560.2(c)(6)(i)-(ii).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The party seeking summary judgment bears the initial burden of demonstrating absence of genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party.  *Tao*, 27 F.3d at 638.

## III. DISCUSSION

Defendants have moved for judgment on the pleadings as to State Farm Bank's standing, or in the alternative for summary judgment against preemption.  Plaintiffs have moved for summary judgment in favor of preemption.  The parties agree that there are no genuine issues of material fact in dispute.  Defs.' Mot. at 3; Pls.' Mot. at 1.  At issue is the legal question of State Farm Bank's claim of preemption.  The District lays out a two-prong attack: 1) State Farm Bank does not have standing because

it has suffered no actual injury for Article III purposes and/or because the claim is not yet ripe since the District has not yet enforced its mortgage regulations over the agents; and 2) the District's regulations as to the independent contractor agents are not preempted because the HOLA and OTS regulations only preempt state laws as to federal savings associations themselves, not independent contractors.

### A.   Standing

#### 1.   Actual Injury

The three elements of Article III standing are injury, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  At issue here is the injury prong, which must be "actual," "concrete," and "particularized" in order to meet the constitutional bar. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  For standing purposes, the court must assume the merits in favor of the plaintiff. *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975)).  Here, that means assuming that the District's regulations over State Farm Bank's agents are indeed preempted.

The District concedes actual injury to Plaintiff agent Jon Laskin, but argues that State Farm Bank itself suffers no injury because its regulations exempt all federal savings associations. Defs.' Mot. at 24-32.  State Farm Bank, the argument goes, cannot

-8-

create an Article III injury by its "voluntary" choice to use
independent contractors, who are subject to the District's
regulations.  State Farm Bank responds that it suffers two sorts
of injury: 1) interference with its mortgage-related business
decisions; and 2) responsibility of paying agents' licensing,
registration, and renewal fees, which can run to a few thousand
dollars per agent and more than $3 million annually nationwide.
Pls.' Opp'n at 28-32.

State Farm Bank has the better of the argument as either
sort of injury suffices for Article III standing.  Using
independent contractors, especially those it already has a
relationship with because of the connection to its parent State
Farm Mutual, is clearly a business opportunity, the denial or
burden of which is a sufficient constitutional injury.  *See
Lepelletier v. FDIC*, 164 F.3d 37, 42 (D.C. Cir. 1999).  Even more
concretely, State Farm Bank actually has to pay for the costs of
fees and exams in order to have its agents market its services.

### 2.  Pre-enforcement Challenge

The District characterizes State Farm Bank's claim as a pre-
enforcement challenge that is not yet ripe because there has been
no credible threat that the District will actually enforce its
regulations against the marketing agents.  Circuit law on pre-
enforcement challenges requires that the complainant show it has
been "specifically targeted" or "singled out" for enforcement,

rather than just claiming a general threat of enforcement of the District's laws.  *See Parker*, 478 F.3d at 374-75.

The problem with the District's argument is that State Farm Bank has *already* suffered the injuries in fact of having its business decisions interfered with and of having to comply with, under protest, the District's allegedly preempted regulations. Thus, the posture of this case is not analogous to a pre-enforcement challenge where no actual injury has occurred.  *See id*. at 376 (an actual injury independent of prospective enforcement of the laws makes inapplicable the stringent requirements for pre-enforcement standing).   In sum, State Farm Bank has standing.[2]

   **B.   Preemption**

      **1.   Overview of Doctrine and Recent Case Law**

The federal preemption doctrine is based on the Supremacy Clause of the United States Constitution, which provides in relevant part "the Laws of the United States which shall be made in Pursuance" of the Constitution "shall be the supreme Law of the Land."  U.S. Const., art. VI, cl. 2.  Federal preemption may be express, where a federal statute or regulation contains specific language indicating preemption.  *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982).  Or, federal preemption may be implied, where there is either "field

---

   [2]   The District concedes standing as to Plaintiff Jon Laskin, State Farm Bank's representative marketing agent.

preemption" (pervasive scheme of federal regulations leaves no room for states) or "conflict preemption" (compliance with federal and state regulations is a "physical impossibility" or where state law is an obstacle or burden to the purposes of the federal law). *Id.*

While there is usually a presumption against preemption over state police powers, this presumption does not apply when there is "a history of significant federal presence" in an area. *United States v. Locke*, 529 U.S. 89, 108-20 (2000). Regulation over banking is one such area. Moreover, Congress has directly regulated federal savings associations since passage of the HOLA in 1933. OTS's regulatory authority has only expanded as federal savings associations, like federal banks, have been allowed to perform many more financial services.

Two recent cases provide guidance on preemption analysis in this arena. The first is a 2007 decision by the Supreme Court involving state laws requiring that operating subsidiaries of federal banks, but not the federal banks themselves, register and pay fees in order to perform mortgage-lending activities. *Watters v. Wachovia Bank*, 550 U.S. 1 (2007). The Court held that whether the federal bank or its operating subsidiary performed the mortgage activity, state laws as to licensing, reporting and visitation were preempted because they would interfere with the bank's federally authorized business. *Id.* at 13-15. The Court

-11-

found that, under the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.*, federal banks were specifically authorized to engage in real estate lending.  *Id*.  Moreover, federal banks were also authorized to act through operating subsidiaries, as long as those operating subsidiaries were subject to the same federal regulations as the bank.  *Id*.  The Court provides its key rationale in this passage: "We have never held that the preemptive reach of the NBA extends only to a national bank itself.  Rather, in analyzing whether state law hampers the federally permitted activities of a national bank, we have focused on the exercise of a national bank's *powers*, not on its corporate structure."  *Id*. at 18 (emphasis in original).  In *Watters* then, the Court found preemption based on the "function" the operating subsidiaries were performing (mortgage lending), though the Court also made note that the operating subsidiaries were "subject to the same terms and conditions" and were effectively under the control of the parent banks.  *Id*. at 20.

The second case comes from the Sixth Circuit, and has nearly identical facts to the case at hand.  *State Farm Bank v. Reardon*, 539 F.3d 336 (6th Cir. 2008).  Relying on the Opinion Letter, State Farm Bank challenged Ohio laws requiring State Farm Bank's exclusive agents (the same type of independent contractor agents here) to be registered and licensed in order to market mortgage products.  *Id*. at 338.  The Sixth Circuit, relying heavily on the

-12-

Supreme Court's *Watters* opinion, held that Ohio's laws were
expressly preempted even as to the independent contractor agents.
*Id*. at 347-48.  The court reasoned that, following *Watters*, the
proper preemption analysis focuses on the "the activity being
regulated rather than the actor who is being regulated." *Id*. at
345.  The court found that federal law authorized State Farm Bank
to: 1) engage in mortgage activities, including marketing and
advertising; and 2) select its own business model to efficiently
and effectively provide credit, including the utilization of
third-party contractors.  *Id*.  With these two factors identified,
it was a short step to conclude that Ohio could not regulate
these activities – in other words, Ohio could not regulate State
Farm Bank's marketing of mortgage services, and because State
Farm Bank is allowed to perform the same marketing acts through
third- party agents, Ohio may not regulate those agents as well.
*See also Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1004 (9th
Cir. 2008) (California law requiring federal savings associations
to refund mortgage "lock-in fees" field preempted based on HOLA
and OTS regulations); *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396
F.3d 178-182-84 (2d Cir. 2005) (New York law requiring federal
savings association to pay interest on mortgage escrow accounts
field preempted based on HOLA and OTS regulations).

### 2.   The District's Regulations Conflict with Federal Law

Following the reasoning of *Watters* and the nearly identical case of *Reardon*, the Court rules that the District's mortgage regulations (i.e., registration, licensing, fees) are preempted as applied to State Farm Bank's exclusive independent contractor marketing agents.  *Watters* was not clear as to type of preemption, instead focusing on the "interference" and "impairment" of the state mortgage laws over Wachovia Bank's operating subsidiaries.  550 U.S. at 18-19.  *Reardon* found express preemption, although its reasoning sounded in conflict preemption, citing the state law's "significant interference" with State Farm Bank's business decisions and authority to utilize independent contractor agents to markets its mortgage products.  539 F.3d at 349.  In any event, the crucial theme of both cases is to look to the activity being regulated, not the actor.

Here, any District regulations attempting to regulate the marketing activities of State Farm Bank itself would be clearly and expressly preempted – this is why the District exempts State Farm Bank from its regulations.  The HOLA contemplates third-party activity on behalf of federal savings associations, *see* 12 U.S.C. § 1464(d)(7)(D)(i) (OTS has authority to regulate third-party activity on behalf of federal savings associations as if

federal savings association itself was performing activity), and the OTS allows federal savings associations to act via independent contractors as long as OTS retains regulatory authority.  These factors, combined with judicial precedent, lead to the conclusion that the District may not regulate the marketing activities of State Farm Bank's agents – at least, where State Farm Bank has an exclusive arrangement and substantial control over the agents, and where those agents are subject to OTS oversight.

The District tries mightily to avoid preemption, but its arguments are ultimately unavailing.  First, the District attempts to distinguish *Watters*, reasoning that the operating subsidiaries at issue in *Watters* are directly under the control of the parent federal savings association, while the independent contractors agents at issue here are, in terms of supervisory tort liability, not under the complete control of State Farm Bank.  Defs.' Reply at 6-7.  The Court, like the Sixth Circuit in *Reardon*, finds this a distinction without a difference as the focus should be on the activity being regulated, not the entity being regulated.  *Reardon*, 539 F.3d at 345-46.

An additional flaw in this argument is with the District's premise that the issue of control is the same for purposes of both preemption and tort liability.  On the uncontested facts here, State Farm Bank exercises control over its agents by

requiring them to go through a training program and be subject to a compliance program.  Moreover, OTS has expressly determined that it has the authority to regulate these independent contractor agents, concluding in its Opinion Letter that the District's laws are only preempted as long as State Farm has sufficient control and as long as the agents comply with OTS regulations.  Control in the context of preemption is not *per se* control in the context of tort liability.

The District's next argument is that the Court should not give *Chevron* deference to the Opinion Letter because it is not a formal (i.e., notice and comment) rule-making and because it would allow a federal agency to aggrandize its own authority by finding preemption however and whenever it wanted.  Defs. Mot. at 20-24.  Agency interpretations of their own statutes and regulations are usually provided strong deference.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Recently, however, members of the Supreme Court have questioned whether such controlling weight should be provided to agency determinations of preemption, since the states are not formally represented in agency action.  *See Watters*, 550 U.S. at 41 (Stevens, J., dissenting) ("when an agency purports to decide the scope of federal preemption, a healthy respect for state sovereignty calls for something less than *Chevron* deference.").  In *Watters* itself, the majority avoided the issue by finding that the statute and regulations led

to preemption, rather than relying solely on the agency interpretation.  *Id*. at 20-21.  This same avoidance tactic was used by the Sixth Circuit in *Reardon*.  539 F.3d at 341.  As in those cases, the Court finds it is unnecessary to decide the level of deference owed to the Opinion Letter since an independent review of the HOLA and OTS regulations calls for preemption.

The District's last argument is that its regulations do not really conflict with the OTS regulations because both are aimed at consumer protection.  Defs.' Mot. at 5.  This argument fails because even state consumer protection laws may be subject to preemption (the District cites no rule otherwise) and because there is an actual conflict here since OTS has specifically determined that the District may not regulate the mortgage-related marketing activities of State Farm Bank's independent contractor agents.

## III. CONCLUSION

Defendants' motion for judgment on the pleadings, or in the alternative for summary judgment is **DENIED**.  Plaintiffs' motion for summary judgment and entry of a permanent injunction is **GRANTED**.  Any District regulations promulgated pursuant to D.C. Code § 26-1101 *et seq*. are preempted by the Home Owners' Loan Act, 12 U.S.C. § 1461 *et seq*., and regulations of by the federal Office of Thrift Supervision as applied against Plaintiff State

-17-

Farm Bank and the exclusive agents under its control and subject to oversight by the Office of Thrift Supervision.  Defendants the District of Columbia, Adrian M. Fenty, in his official capacity as Mayor of the District of Columbia, Thomas E. Hampton, in his official capacity as Commissioner of Insurance, Securities and Banking of the District of Columbia, and their agents and/or employees are permanently enjoined from enforcing D.C. Code § 26-1101 *et seq*. and any District regulations promulgated thereto seeking to regulate the banking-related activities, including mortgage and marketing services, against Plaintiff State Farm Bank and the exclusive agents under its control and subject to oversight by the Office of Thrift Supervision.  An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            July 28, 2009**